IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DEBORAH K. MAYNARD,**
**Claimant Below, Petitioner**

**FILED**
**February 27, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-152**     (WorkForce W. Va. Bd. of Rev. Case No. R-2024-3065)

**CROWN EQUIPMENT CORPORATION**
**D/B/A CROWN LIFT TRUCKS C T**
**CORPORATION SYSTEM,**
**Employer Below, Respondent**

**and**

**SCOTT A. ADKINS, in his official**
**capacity as Acting Commissioner**
**of WorkForce West Virginia,**
**Respondent**


**MEMORANDUM DECISION**

Petitioner Deborah K. Maynard appeals the March 14, 2025, decision of the WorkForce West Virginia Board of Review ("Board") which affirmed the decision of the administrative law judge ("ALJ") and found Ms. Maynard was disqualified from unemployment benefits following her separation from employment. Respondent Crown Equipment Corporation d/b/a Crown Lift Trucks C T Corporation System ("Crown") filed a response.[1] Ms. Maynard filed a reply. Respondent Scott A. Adkins, in his official capacity as the Acting Commissioner of WorkForce West Virginia ("WorkForce"), did not participate in this appeal.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For the reasons set forth below, a memorandum decision affirming the Board's decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Ms. Maynard was employed by Crown as a sales representative beginning on November 28, 2022. On December 2, 2024, Ms. Maynard emailed a letter dated November

---

[1] Ms. Maynard is represented by Justin D. Jack, Esq. Crown is represented by Bethany S. Wagner, Esq., and Kathleen M. Klapkowski, Esq.

29, 2024, to her supervisor while she was on leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA") stating she was resigning from her position effective immediately. After her resignation, Ms. Maynard applied for unemployment compensation benefits. On December 17, 2024, a WorkForce claims deputy found Ms. Maynard was disqualified from unemployment benefits because she failed to provide evidence showing her separation from employment involved fault on the part of Crown. Ms. Maynard timely appealed the deputy's decision to the ALJ. On January 14, 2025, the ALJ held a telephonic hearing during which Ms. Maynard and Crown's regional human resources manager Steve Fisher appeared and testified. Counsel for Crown also appeared.

During the hearing, Ms. Maynard testified that on August 22, 2024, her physician advised her that she needed hip replacement surgery and recommended a pre-surgery limitation of only four hours of driving per day. On that same date, Ms. Maynard stated she advised her boss, Dan Sheets, that she would need to take FMLA leave while she recovered from surgery. Ms. Maynard wanted to continue working until her surgery date of September 18, 2024, and she made four requests for both pre- and post-operation accommodations pursuant to the Americans with Disabilities Act ("ADA"). For her first ADA request, Ms. Maynard testified that she requested a reduced work schedule and to work remotely to accommodate her pre-surgery driving restrictions. Second, Ms. Maynard requested a modified work schedule including leaving "home base" at 8:00 a.m., unless there was a meeting; working remotely various days and times during the week; receiving leave for one doctor's appointment every three months; and receiving an additional two days of leave a month for flare-ups. Third, Ms. Maynard requested the ability to take a ten-minute break for every two hours of driving and for other short breaks as needed due to her medical condition. Finally, she requested to work remotely from December 2, 2024, until December 18, 2024. She testified that she resigned from her position because Crown denied these requests and refused to accommodate her pre-surgery driving restrictions, which forced her to begin her FMLA leave three weeks earlier than she requested, and also shortened her recovery time.

In contrast, Mr. Fisher testified that Crown denied some of Ms. Maynard's requests but did accommodate others. He testified that Crown was unable to accommodate Ms. Maynard's physician prescribed driving limitations due to the nature of her job and instead placed her on short-term disability, which paid her full salary for ninety days, along with granting FMLA leave. Mr. Fisher explained that after the ninety-day period, Ms. Maynard could transition to long-term disability and receive sixty percent of her salary going forward. With regard to her ADA accommodations, Mr. Fisher explained that Crown only partially denied Ms. Maynard's first and second ADA accommodation requests related to a pre-operation modified work schedule, ADA leave for appointments, and leave for flare-ups because Ms. Maynard did not provide medical documentation to support these requests. For her third ADA request, Mr. Fisher testified that Crown granted Ms. Maynard's request to be provided breaks while driving post-surgery. Finally, Mr. Fisher stated that Ms. Maynard's fourth ADA request to work remotely post-surgery was denied

because Crown determined that this accommodation would not allow her to complete her essential job functions since she was required to meet with clients in person.

On January 17, 2025, the ALJ issued a written decision affirming the deputy's decision, finding Ms. Maynard left work voluntarily without good cause involving fault on the part of Crown, and finding Ms. Maynard was disqualified from unemployment compensation benefits. The ALJ found Ms. Maynard quit her job because she disagreed with Crown's decision regarding her request for ADA accommodations and found she failed to present evidence to show that Crown's decision was clearly wrong. Ms. Maynard appealed this decision to the Board, and the Board issued a decision on March 14, 2025, adopting the findings of the ALJ and affirming the ALJ's decision to disqualify Ms. Maynard from unemployment compensation benefits. It is from this order that Ms. Maynard now appeals.

In this appeal, our standard of review is as follows:

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

Syl. Pt. 3, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994).

On appeal, Ms. Maynard asserts one assignment of error and argues the Board erred in failing to recognize that her separation from employment was the result of a constructive discharge caused by fault attributable to Crown. We disagree. West Virginia Code § 21A-6-3 (2025) states as follows:

> Upon the determination of the facts by the commissioner, an individual is disqualified for benefits:
>
> (1) For the week in which he or she left his or her most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least 30 working days.

The Supreme Court of Appeals of West Virginia ("SCAWV") has defined "good cause," as used within this statute, as meaning "cause involving fault on the part of the employer sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." Syl. Pt. 4, *Childress v. Muzzle*, 222 W. Va. 129, 663 S.E.2d 583 (2008). When determining whether an employee "voluntarily quit," the SCAWV has explained as follows: "[f]rom our reading of the [Unemployment

3

Compensation] Act, we believe the obligation of employees under the Act is to do whatever is reasonable and necessary to remain employed." *Id.* at 133, 663 S.E.2d at 587.

In this case, Ms. Maynard testified that she voluntarily quit her job because Crown denied her ADA accommodation requests and refused to accommodate her pre-surgery driving restrictions. Ms. Maynard testified that she made four ADA accommodation requests and that Crown denied them all. However, the ALJ relied on Mr. Fisher's testimony and found that her first, second, and fourth ADA requests were denied because of her essential job functions and her failure to provide medical documentation to support the requests. These findings are factual determinations that are entitled to substantial deference, and Ms. Maynard has failed to show that these findings are clearly wrong. *See Adkins*, 192 W. Va. at 561, 453 S.E.2d at 395, syl. pt. 3. It is well-established that "[a]n appellate court does not reweigh the evidence[.]" *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007) (per curiam); *see also Coles v. Century Aluminum of W. Va.*, No. 23-ICA-81, 2023 WL 7202966, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision). "We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts." *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995). The ALJ found Ms. Maynard left work voluntarily without good cause and did not show fault on the part of Crown because she failed to present evidence to show Crown's decisions regarding her request for ADA accommodations were wrong. Upon our review of the record, we conclude that the ALJ's findings of fact and conclusions of law, as upheld by the Board, were not clearly wrong.

Accordingly, we affirm the Board's March 14, 2025, order.

Affirmed.

**ISSUED:** February 27, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

4